IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SLOBODAN SUBASIC,

           Plaintiff,

v.

THE STATE OF OREGON by and through the OREGON LIQUOR AND CANNABIS COMMISSION, OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES, and RICH EVANS, TRAVIS HAMPTON, LAURA GOMEZ, BERRI LESLIE, BRIAN LIGHT, NATHAN RIX, DANICA FOSTER, and CRAIG PRINS, as individuals,

           Defendants.

Case No. 3:24-cv-00553-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Plaintiff Slobodan Subasic ("Subasic") filed this action against the State of Oregon, by and through the Oregon Liquor and Cannabis Commission ("OLCC"), the Oregon Department of Administrative Services ("DAS"), and several individually-named OLCC and DAS employees (together, "Defendants"). Subasic alleges violations of his constitutional rights and state law

PAGE 1 – OPINION AND ORDER

relating to OLCC's termination of his employment. (First Am. Compl. ("FAC"), ECF No. 10.) The Court has jurisdiction over Subasic's claims under 28 U.S.C. §§ 1331, 1343(3), and 1367.

Defendants filed a motion to quash a subpoena that Subasic served on the Oregon Department of Justice ("DOJ"), seeking documents relating to DOJ's criminal investigation into Subasic's alleged misconduct at OLCC (the "Subpoena"). (Defs.' Mot. Quash ("Defs.' Mot.") at 1-9, ECF No. 20.) Defendants move to quash the Subpoena on the grounds that, *inter alia*, Subasic seeks the production of documents protected by the attorney work product doctrine. (*See id.* at 2-5.) For the reasons that follow, the Court grants Defendants' motion to quash.

## BACKGROUND

On June 3, 2022, OLCC's human resources ("HR") staff began investigating reports that OLCC employees were diverting rare and specialty liquor to themselves through "employee customer service requests." (FAC ¶¶ 29-30.) Subasic was identified as an individual of interest in the investigation between late July and mid-August of 2022, and an HR employee interviewed him on August 22, 2022. (*Id.* ¶¶ 38, 42.) On January 12, 2023, Subasic received notice that the allegations against him relating to the diversion of specialty liquor had been "sustained." (*Id.* ¶¶ 44-45.) Subasic received an "oral reprimand" for his alleged misconduct. (*Id.* ¶ 46.)

On February 8, 2023, OLCC released records relating to the HR investigation to a news organization in response to a public records request. (*Id.* ¶ 59.) On February 10, 2023, Oregon's attorney general announced that she, along with DOJ, were initiating a criminal investigation into "ethics violations related to the purchase of liquor by certain staff members of the [OLCC]."[1] (*Id.* ¶ 66.)

///

---

[1] *See* OR. REV. STAT. § 180.070(1) ("The Attorney General may, when directed to do so by the Governor, take full charge of any investigation or prosecution of violation of law[.]").

PAGE 2 – OPINION AND ORDER

On March 9, 2023, the OLCC terminated Subasic as a result of the HR investigation. (*Id*. ¶ 71.) On May 13, 2024, DOJ announced that its criminal investigation had concluded, and that no criminal charges would be filed. (Decl. Shawn O'Neil Supp. Pl.'s Resp. Defs.' Mot. Quash ("O'Neil Decl.") ¶¶ 14-15, ECF No. 27.) On the same date, DOJ publicly released an eleven-page memorandum entitled "Summary of OLCC Investigation." (*Id*. Ex. 2, ECF No. 27-2.)

Subasic filed this action in state court on February 5, 2024, and Defendants removed the case to federal court on April 1, 2024. (Defs.' Notice Removal, ECF No. 1.) Thereafter, Subasic served the Subpoena (dated August 26, 2024) on a DOJ records custodian. (O'Neil Decl., Ex. 3, ECF No. 27-3.) The Subpoena seeks the production of "[a] complete copy of your entire file pertaining to the criminal investigation launched by the Oregon Department of Justice Criminal Division arising from the February 10, 2023 announcement by Attorney General Ellen Rosenblum pertaining to alleged 'ethics violations related to the purchase of liquor by certain staff members of the Oregon Liquor and Cannabis Commission and potentially others.'" (*Id.* at 4.) The Subpoena further seeks, *inter alia*, "[a]ll investigation reports, . . . file notes and memorandum concerning the OLCC Investigation"; "all audio and video recordings that exist that were conducted by DOJ as part of the OLCC Investigation"; and "all reports, audio or video recordings that memorialize interviews taken as part of the OLCC Investigation of all witnesses" (listing the names of forty-one witnesses). (*Id*. at 4-5.) The Subpoena included a September 12, 2024, return date. (*Id*. at 1.)

Defendants filed their motion to quash the Subpoena on October 11, 2024 (*see* Defs.' Mot.), and Subasic responded on November 1, 2024 (*see* Pl.'s Resp. Defs.' Mot. Quash ("Pl.'s Resp."), ECF No. 26). The Court ordered supplemental briefing on February 7, 2025 (ECF No.

34), which the parties filed on February 21, 2025 (ECF Nos. 35-36), and the Court took the motion under advisement on February 24, 2025 (ECF No. 38).

## DISCUSSION

Defendants move to quash the Subpoena on several grounds, including that it requires the disclosure of protected attorney work product. (Defs.' Mot. at 3-4.) The Court agrees that DOJ's investigation file is protected work product, and therefore does not reach Defendants' other arguments.

I.   **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure ("Rule") 45, courts "must" quash or modify a subpoena if it requires "disclosure of privileged or other protected matter, if no exception or waiver applies[.]" FED. R. CIV. P. 45(d)(3)(A)(iii). "Pursuant to Federal Rule of Evidence 501, federal common law generally governs claims of privilege." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016). "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Id.* (quoting *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005)); *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019) ("In federal court, the work-product doctrine is governed by federal law, even in diversity cases." (citing *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010))).

The attorney work product doctrine is codified in Rule 26: "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the materials are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental

PAGE 4 – OPINION AND ORDER

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B); *see also United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (recognizing that an attorney's work product as reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" and must be protected to allow "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel").

The Ninth Circuit has held that "to qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989)) (simplified). The Ninth Circuit has adopted the "because of" standard for determining whether a document was prepared "in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907. The "because of" standard provides that a document is prepared in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* (simplified) ("The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was

PAGE 5 – OPINION AND ORDER

created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'").

Unlike the attorney-client privilege, which can be waived by voluntary disclosure, the work product privilege is not waived unless voluntary disclosure "has substantially increased the opportunities for potential adversaries to obtain the information." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020).

"[T]he party asserting protection under the work-product doctrine generally has the burden to show that the elements of the doctrine have been established." *McKenzie L. Firm, P.A.*, 333 F.R.D. at 641-42 (first citing *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995); then citing *Murphy v. Kmart Corp.*, 259 F.R.D. 421, 428 (D.S.D. 2009); and then citing *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009)).

## II.    ANALYSIS

Defendants argue that DOJ conducted its OLCC investigation in anticipation of litigation because all of its investigation materials were "generated or collected as part of the DOJ's investigation into whether prosecutable crimes had occurred[,]" and therefore its investigation file is protected work product. (Defs.' Mot. at 5; Decl. Kurt Miller Supp. Defs.' Mot. Quash ("Miller Decl.") ¶¶ 3-6, ECF No. 21.) Defendants report that DOJ's investigation file includes both opinion work product, such as reports and memoranda, and fact work product, such as recordings of interviews. (Defs.' Mot. at 5.) Subasic responds that "no work product doctrine exists," and attempts to distinguish the cases on which Defendants rely. (Pl.'s Resp. at 7-8.)

### A.    Work Product Protection

#### 1.    Prepared in Anticipation of Litigation

It is well settled that an attorney's investigation of potential misconduct is protected by the work product doctrine if the attorney conducts the investigation because of the prospect of

PAGE 6 – OPINION AND ORDER

litigation. In *Hickman v. Taylor*, the Supreme Court addressed the work product doctrine and held that an attorney's investigation of a fatal tugboat accident was protected work product. 329 U.S. 495, 510-11 (1947). In *Hickman*, the plaintiffs in a civil suit against the tugboat's owner sought to discover the investigating attorney's memoranda of interviews and any facts he learned during his investigation. *Id.* at 499-500. The Supreme Court held that the attorney's memoranda and facts learned during his investigation were protected work product:

> Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.
>
>     Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510-511 (citation omitted); *see also In re Grand Jury Subpoena*, 357 F.3d at 905-08 (applying the "because of" test and concluding that investigation documents were entitled to work product protection because the threat of litigation prompted the defendant to hire an outside

PAGE 7 – OPINION AND ORDER

consultant and gather the investigative documents); *Bagdasaryan v. City of Los Angeles*, No. 2:15-cv-01008-JLS (KES), 2017 WL 10560536, at *7 (C.D. Cal. Nov. 1, 2017) ("Courts have determined that internal investigations can constitute work product.") (citations omitted); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-cv-01431-RCJ-PAL, 2016 WL 2593916, at *8 (D. Nev. May 5, 2016) (holding that where a defendant hired two outside law firms to conduct an internal investigation, "[t]he court is satisfied that the documents were produced 'because of' anticipated litigation and would not have been prepared in substantially similar form without the threat of litigation by the government" (citing *In re Grand Jury Subpoena*, 357 F.3d at 908)).

Defendants have presented a declaration from the lead prosecutor assigned to DOJ's OLCC investigation, representing that "[a]fter the OLCC determined that [Subasic] and other OLCC employees diverted specialty liquor, the DOJ opened an investigation regarding potential criminal misconduct by [Subasic] or any other then-current or former OLCC employee." (Miller Decl. ¶ 2.) The lead prosecutor further represents that the documents and materials listed in the Subpoena "were obtained or generated for purposes of the DOJ's investigation into whether [Subasic] or other OLCC employees had committed any crime within the scope of the conduct that OLCC had described as diverting specialty liquor." (*Id.* ¶ 6.) Thus, Defendants argue that DOJ conducted the investigation in anticipation of the potential prosecution of criminal charges against OLCC employees. (Defs.' Mot. at 3-4.) Subasic does not address whether an investigation of potential criminal conduct reasonably anticipates litigation, nor cites any authority to the contrary.

For these reasons, the Court finds that DOJ conducted the OLCC investigation in anticipation of litigation.

PAGE 8 – OPINION AND ORDER

### 2. Prepared by or for Another Party or its Representative

Rule 26 provides that work product is available only for materials that are prepared "by or for another party or its representative[.]" FED. R. CIV. P. 26(b)(3)(A). "Although some courts have extended the work product privilege outside the literal bounds of the rule, [the Ninth Circuit has] conclude[d] that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (citations omitted); *cf. Doubleday v. Ruh*, 149 F.R.D. 601, 606 (E.D. Cal. 1993) ("Neither can the non-party district attorneys claim the work product privilege in this litigation. As clearly held by *In Re California Public Utilities Com[m]'n*, . . . the work product immunity cannot be claimed by one who would ordinarily hold the right to assert the immunity unless that person/entity is a party (or a party's representative) to the litigation in which the immunity is asserted.") (simplified).

The Court requested supplemental briefing on whether a party to this litigation or its representative prepared the materials for which Defendants now seek work product protection: "[f]or whom did [DOJ's] Criminal Justice Division prepare its work product, and is that entity a party to this litigation?" and "[m]ust that entity be a party to invoke work product protection here?" (Order, ECF No. 34, citing *Doubleday*, 149 F.R.D. at 606.) The Court specifically invited "citation to relevant authorities." (*Id.*)

The parties filed supplemental briefs, agreeing that DOJ prepared the materials for which Defendants now seek work product protection as part of a criminal investigation. (*See* Pl.'s Suppl. Br. Opp'n Defs.' Mot. Quash ("Pl.'s Suppl. Br.") at 2, "The Oregon [DOJ]'s Criminal Justice Division ("CJ") was charged with conducting an independent criminal investigation concerning [OLCC] and its employees regarding the purchase of alcohol.", ECF No. 35; Defs.' Suppl. Br. Mot. Quash ("Defs.' Suppl. Br.") at 2, "Once notified that OLCC employees had been

PAGE 9 – OPINION AND ORDER

diverting specialty liquor, the DOJ began an investigation to determine whether any crime had been committed.", ECF No. 36.) The parties also agree that the relevant "client" for whom DOJ prepared the materials was the State of Oregon. (*See* Pl.'s Suppl. Br. at 3, "CJ's client to the extent it had one was the People of the State of Oregon."; Defs.' Suppl. Br. at 2, "The [DOJ]'s client is always the State of Oregon[,]" citing OR. REV. STAT. § 180.220(1)(a)-(c).)

The parties appear to diverge with respect to whether the "People of" the State of Oregon is a party to the current litigation. Defendants acknowledge that "work-product immunity can only be asserted by a party to litigation" but argue "here, the State of Oregon is a party." (Defs.' Suppl. Br. at 3.) Subasic, in turn, argues that "Defendants . . . [cannot] be considered synonymous with the 'People' of the State of Oregon." (Pl.'s Suppl. Br. at 3) (simplified). However, Subasic fails to address that he did, in fact, name the State of Oregon as a defendant in this litigation.[2] (*See* FAC, naming the "State of Oregon" as a defendant.) Subasic offers no meaningful distinction between the "People of" the State of Oregon and the State of Oregon, and cites no cases holding that a state cannot maintain work product for materials created on its behalf when it is named in subsequent civil litigation. (*See generally* Pl.'s Suppl. Br.)

The only authority Subasic cites in support of his argument that the State of Oregon, a party to this case, is different than the "People of" the State of Oregon, for which DOJ prepared

---

[2] Defendants removed this case from state court (*see* ECF No. 1), thereby waiving sovereign immunity for the State of Oregon. *See DeWalt Prods., Inc. v. City of Portland*, No. 3:14-cv-01017-AC, 2016 WL 6089718, at *18 (D. Or. Oct. 17, 2016) ("Plaintiffs filed this action in state court. The OLCC, as well as [an] OLCC employee . . . , who was named in his official and individual capacities . . . , were named as defendants. . . . [T]he OLCC and [OLCC employee] removed the action to this court based on original jurisdiction. The invocation of federal jurisdiction by a state, such as by removing a case to federal court, is incompatible with an intent to preserve Eleventh Amendment immunity and may be viewed as a waiver of such. The court finds the State of Oregon waived its sovereign immunity when it removed this action from state court to federal court.") (citations omitted).

PAGE 10 – OPINION AND ORDER

the materials at issue, is *Doubleday*. (Pl.'s Suppl. Br. at 3, citing *Doubleday*, 149 F.R.D. at 606.) However, in that case, the district court found that "it cannot be held that the District Attorney or the County of Sacramento is synonymous with the 'People[ of the State of California,]'" but suggested that the conclusion would be different if the investigating entity was the state attorney general instead of the county. *Doubleday*, 149 F.R.D. at 606 ("The plaintiff in the prior litigation was 'the People of the State of California.' It is true that the District Attorney of the County of Sacramento usually brings these cases, but the Office of the Attorney General may unilaterally decide to bring a case against a criminal defendant, and may do so where the district attorney's office has decided not to prosecute. Therefore, it cannot be held that the District Attorney or the County of Sacramento is synonymous with the 'People.'"). Other federal cases have similarly suggested that a state may maintain work product protection for a criminal investigation if the state is a party to subsequent civil litigation. *See, e.g.*, *Roberts v. City of Fairbanks*, No. 4:17-cv-00034-SLG, 2022 WL 889401, at *5 (D. Alaska Mar. 25, 2022) ("At the outset, it is not clear that the State can properly invoke the work product doctrine to preclude discovery in this case because the doctrine only attaches to documents 'prepared by or for another party or by or for that other party's representative.' The State is not a party to this litigation.") (simplified); *Sommer v. United States*, No. 3:09-cv-02093-WQH (BGS), 2011 WL 4433631, at *6 (S.D. Cal. Sept. 22, 2011) ("[B]ecause the San Diego District Attorney's Office was not a party to the criminal case and the State of California is not a party to the present civil action, the work product doctrine does not apply[.]"); *cf. United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 169 F. Supp. 3d 54, 59 (D.D.C. 2015) (denying motion to compel the production of an investigation report, prepared in connection with a criminal prosecution, in subsequent civil litigation, where "the United States was a party to the criminal prosecution of [the claimant] and

PAGE 11 – OPINION AND ORDER

is a party to the instant [civil] forfeiture suit" and finding that "[n]o more is required for the government to assert work-product protection here over materials prepared in anticipation of the criminal prosecution"), *aff'd sub nom. United States v. All Assets Held at Bank Julius*, No. 1:04-cv-00798 (PLF), 2016 WL 11609892 (D.D.C. Jan. 12, 2016).

Absent any relevant authority to the contrary, the Court holds that DOJ, on behalf of the State of Oregon, may assert work product protection for its criminal investigation file because DOJ prepared the materials for a party to this litigation. *See* FED. R. CIV. P. 26(b)(3)(A) (providing that work product protection is available only for materials that are prepared "by or for another party or its representative").

### 3. Substantial Need

Rule 26 provides that a party may obtain fact work product if the materials are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[3] FED. R. CIV. P. 26 (b)(3)(A)(i)-(ii). Subasic never argues that he has a "substantial need" to obtain work product from DOJ's investigation file, but rather asserts that the subpoenaed records "are reasonably calculated to lead to admissible evidence";[4] the "information is crucial for

---

[3] Opinion work product, which includes the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" is subject to a different standard. FED. R. CIV. P. 26(b)(3)(B). Under Ninth Circuit law, opinion work product is discoverable only if it is "*at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.") (citations omitted).

[4] The 2015 amendments to Rule 26 removed the language "reasonably calculated to lead to admissible evidence." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery.").

streamlining the plaintiff's case regarding discovery and deposition needs"; and he is "entitled to this information to secure civil justice." (Pl.'s Resp. at 9-10.)

The Court finds that Subasic has not demonstrated a substantial need for the materials in DOJ's investigation file to prepare his case or that he cannot without undue hardship obtain the substantial equivalent by other means. *See* FED. R. CIV. P. 26 (b)(3)(A)(i)-(ii). In the Subpoena, Subasic lists the forty-one individuals whom DOJ interviewed during its investigation, and Subasic has not alleged that any of those individuals are unavailable for deposition. *See, e.g.*, *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2016 WL 2593916, at *8 ("The Plaintiffs are able to obtain discovery from the witnesses who were interviewed by deposing the witnesses. Plaintiffs have not met their burden of establishing substantial need for the materials in preparation of their case, or that they are unable to obtain the substantial equivalent of the materials without undue hardship as required by Fed. R. Civ. P. 26(b)(3)."); *see also Bagdasaryan*, 2017 WL 10560536, at *7 ("Plaintiffs do not appear to dispute that the work product doctrine may apply to the [internal investigation r]eport, but instead assert that they have demonstrated a substantial need for factual information in the [report]. . . . The Court rejects this argument, particularly where Plaintiffs have not deposed [any witnesses]."); *SEC v. Roberts*, 254 F.R.D. 371, 382 (N.D. Cal. 2008) ("However, [the requesting party] has not demonstrated why he cannot depose the witnesses himself. [The requesting party] has not shown that any of the witnesses are unavailable or will assert their Fifth Amendment rights. [The requesting party] is free to ask the witnesses what they knew and when they knew it and the witnesses may not claim that what they told the [investigating] attorneys is protected by any privilege. Thus, a substantial need for the interview notes has not been shown. . . . Further, [the requesting party] has shown

PAGE 13 – OPINION AND ORDER

absolutely no need for the attorney opinions and conclusions intertwined in the interview notes.").

Of course, it would be easier for Subasic to take advantage of DOJ's completed investigation file, but this does not meet the substantial need test. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2016 WL 2593916, at *8 ("It is indeed useful and cost effective to take advantage of the work product, mental impressions, legal analysis and conclusions of one's opposing counsel. However this does not meet the substantial need test."); *see also Andrade-Tafolla v. United States*, No. 3:20-cv-01361-IM, 2022 WL 807658, at *4 (D. Or. Mar. 17, 2022) ("Considering that the work product doctrine's primary function is to 'prevent exploitation of a party's efforts in preparing for litigation,' this Court cannot allow Plaintiff to potentially peer into the [federal a]gency's litigation preparation and strategy without a more significant showing of need." (citing *Admiral Ins. Co. v. U.S. Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989))).

There is nothing preventing Subasic from discovering the same facts through civil discovery that DOJ uncovered in its criminal investigation. *See Hickman*, 329 U.S. at 513 ("Denial of production of this nature does not mean that any material, non-privileged facts can be hidden from the petitioner in this case. He need not be unduly hindered in the preparation of his case, in the discovery of facts or in his anticipation of his opponents' position. Searching interrogatories directed to . . . the tug owners, production of written documents and statements upon a proper showing and direct interviews with the witnesses themselves all serve to reveal the facts in [the attorney's] possession to the fullest possible extent consistent with public policy.").

### 4. Waiver

Subasic argues that DOJ has waived any work product protection that applies to its investigation file by sharing a public summary of the investigation. (*See* Pl.'s Resp. at 9.)

PAGE 14 – OPINION AND ORDER

However, Subasic does not address the applicable standard for waiver of work product protection. (*Id.*, addressing only the standard applicable to waiver of the attorney-client privilege.) Nevertheless, Subasic argues that DOJ's "decision to release the Summary of the OLCC Criminal Investigation on May 13, 2024 constituted waiver of any attorney-client privilege and work product doctrine to the extent such privileges could apply in this case."[5] (*Id.*)

Work product protection is not waived unless voluntary disclosure "has substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina Corp.*, 968 F.3d at 1121. "Waiver of work-product immunity does not, however, destroy work-product immunity for other documents of the same character." *Skynet Elec. Co., Ltd v. Flextronics Int'l, Ltd.*, No. 3:12-cv-06317, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013) (citation omitted).

DOJ publicly disclosed a summary of its investigation, including its conclusion that the case does not merit prosecution.[6] (*See* O'Neil Decl., Ex. 2.) The summary did not include any of DOJ's underlying work product materials, such as interview memoranda, notes, or transcripts,

---

[5] Plaintiff also asserts that "the untimeliness of Defendants['] Motion to Quash should constitute waiver" but provides no authority in support of this argument. (Pl.'s Resp. at 9.)

[6] The parties' briefing also revealed that DOJ made certain investigation materials available to the Oregon Government Ethics Commission. (*See* O'Neil Decl. Ex. 2 at 1, ECF No. 27-2.) The Court requested supplemental briefing on whether DOJ waived any work product protection by sharing its materials with the Oregon Government Ethics Commission. (Order, ECF No. 34.) Defendants responded with evidence that DOJ redacted any work product from the materials it shared with the Oregon Government Ethics Commission. (*See* Decl. Kurt Miller Supp. Suppl. Br. Defs.' Mot. Quash ¶ 4, "Pursuant to public records requests, the DOJ has released redacted copies of special agent reports and attachments to those reports to the requesting members of the public. Upon a request from the Oregon Government Ethics Commission, the DOJ made those same materials available to that agency[,]" ECF No. 37.)

PAGE 15 – OPINION AND ORDER

nor did it include any subpoenaed or other records.[7] Of note, in the summary, DOJ did not share the names of any witnesses it interviewed nor details from any particular interview.

In light of these facts, the Court finds that DOJ's summary of its investigation findings did not substantially increase the opportunity for any potential adversaries to obtain any of the underlying work product from the investigation. Under these circumstances, the Court finds that DOJ did not waive its investigation file's work product protection.[8] *See McIntyre v. Main St. & Main Inc.*, No. 3:99-cv-05328, 2000 WL 33117274, at *4 (N.D. Cal. Sept. 29, 2000) ("[P]laintiffs argue that defense counsel['s] submission to plaintiffs of a detailed letter regarding its internal investigation waived the attorney client privilege and work product doctrine. The letter . . . provides defendant's findings and conclusions. While the letter does provide considerable detail regarding defendant's findings of fact and conclusions, the Court is not convinced that defendant waived the attorney-client privilege or work product doctrine.") (simplified); *cf. In re Mattel, Inc. Sec. Litig.*, No. 2:19-cv-10860, 2021 WL 10417394, at *9 (C.D. Cal. Aug. 4, 2021) (denying the plaintiffs' motion to compel discovery relating to the defendants' investigation of potential criminal conduct, and holding that the defendants did not waive work product protection by producing certain investigation documents to the U.S.

---

[7] Subasic clarified in his response to Defendants' motion that the financial records DOJ subpoenaed during its investigation, of which he is aware, "are not within the scope of the records being sought." (Pl.'s Resp. at 10.)

[8] Even if DOJ waived work product protection for its summary of the investigation, any such waiver does not "destroy work-product immunity for other documents of the same character." *Skynet Elec. Co., Ltd.*, 2013 WL 6623874, at *3 ("[D]efendants contend that waiver of work-product immunity as to [a four-paged email string] would also waive the immunity of any other documents, explicitly the referenced memorandum, that constitute advice of the same character. This argument lacks merit, however, as it conflates the standard for waiver of work-product immunity with that of waiver of attorney-client privilege.").

PAGE 16 – OPINION AND ORDER

Department of Justice and Securities and Exchange Commission because the defendants had not produced any work product to those government agencies).

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion to quash (ECF No. 20), and QUASHES Subasic's subpoena to the Oregon Department of Justice. The parties shall file a joint proposed case management plan by March 14, 2025.

**IT IS SO ORDERED.**

DATED this 28th day of February 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge